Filed 1/9/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JEANETTE SARMIENTO,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | D082443<br><br><br><br>(San Diego County<br>Super. Ct. No. SCD297592) |


PETITION for writ of mandate from an order of the Superior Court of San Diego County, Dwayne K. Moring, Judge. Petition granted.

Katherine Braner, Chief Deputy Public Defender and Emily Rose-Weber, Deputy Public Defender for Petitioner.

Summer Stephan, District Attorney, Linh Lam, Chief Deputy District Attorney, Valerie Ryan and Sara Staninger, Deputy District Attorneys, for Real Party in Interest.

No appearance by Respondent.

In this case, defendant Jeanette Sarmiento requested mental health diversion (Pen. Code, § 1001.36[1]) after she was charged with attempted robbery arising from an incident in which she handed a liquor store clerk a note written in lipstick on a napkin saying, "Let me get the money." The store employees did not give her any money. Instead, they called 911. According to one of the employees, "[I]t looked like she wanted us to call the police."

An unrebutted psychiatric evaluation submitted in support of Sarmiento's request for diversion diagnosed her as suffering from posttraumatic stress disorder (PTSD), major depressive disorder, and stimulant use disorder specific to methamphetamine. The PTSD likely resulted from years of sexual trauma she suffered as a child and adolescent. The parties agree that Sarmiento never received treatment for her foundational mental health diagnoses of PTSD and depression, and her substance abuse largely served as a form of self-medication for those underlying conditions. Although she successfully completed two substance abuse treatment programs—one in 2013 resulted in years of sobriety—the failure to address the foundational mental health issues ultimately led to relapse and a resumption of criminal behavior.

Although it found that Sarmiento met many of the requirements for diversion, the trial court denied her request based on two principal concerns. First and primarily, it found that "her inability to remain drug-free after prior participation in [substance abuse] treatment" indicated "she would not respond well to mental health treatment," which accordingly would not "meet [her] specialized mental health treatment needs." Second, although the court

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

2

did not find that Sarmiento was likely to commit a super strike offense as required by the statute's definition of dangerousness, it nonetheless concluded that Sarmiento "pose[d] an unreasonable risk of danger to the public," and this was an additional factor in the court's decision to deny diversion.

By its terms, section 1001.36 was designed to encourage trial courts to broadly authorize pretrial mental health diversion, providing treatment for qualifying mental disorders that result in criminal behavior. As with any principled exercise of discretion, the court must utilize the appropriate criteria consistent with the principles and purposes of the governing law, only drawing conclusions supported by substantial evidence. Applying these principles, neither of the reasons relied on by the trial court provide a proper basis to deny diversion. Accordingly, we issue the writ and direct the court to grant the request for mental health diversion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Mental Health History*

Sarmiento was raised by her mother and stepfather. Between the ages of five and eight, along with a group of other children, she was sexually abused by her 30-year-old stepbrother on a repeated basis. Sarmiento did not report the abuse to anyone until she was an adult.

Sarmiento's stepfather, who she was close to, died of a heart attack when she was 13. She was hospitalized and saw a psychologist after she threatened to commit suicide by jumping off a bridge. At about the same time, she began using methamphetamine, later selling it with her brother Oscar. A few years later, while still in high school, she was gang raped at a party.

3

In 2013, after being arrested for selling drugs, Sarmiento completed a 120-day residential substance abuse treatment program. She maintained her sobriety for nearly six years, but relapsed in 2019 as a result of an unhealthy romantic relationship with a meth addict who used in her presence and encouraged her to join him. This led to four hospitalizations in that year and two robbery convictions in 2020. While incarcerated she completed additional courses on substance abuse, but received no treatment for her primary mental health diagnoses. She appeared to relapse again shortly before the attempted robbery charge in this case.

Sarmiento's parole agent supervised her before her latest arrest, and was surprised that it occurred. She characterized Sarmiento as a " 'model parolee' " who followed the rules and maintained contact as required. She noted, however, that "drug use exacerbates [Sarmiento's] mental health issues."

Following her arrest, Sarmiento was the subject of a psychological evaluation by Dr. Cynthia Boyd. Boyd's diagnosis confirmed that Sarmiento suffered from two mental disorders—major depressive disorder and PTSD. Boyd noted that while these were consistent with prior diagnoses, in the past "the underlaying cause of her mental illness was not explored." She concluded that Sarmiento would require, among other types of intervention, "trauma-focused psychotherapy for symptoms of untreated, chronic PTSD." In Boyd's opinion, Sarmiento could be safely treated in the community and the "symptoms of [her] mental disorder motivating the criminal behavior would respond to mental health treatment."

B.  *Request for Mental Health Diversion*

In advance of the preliminary hearing, Sarmiento filed a request for mental health diversion under section 1001.36. In support, she attached Dr.

4

Boyd's evaluation and medical records, as well as the statements of various witnesses including family members, her employer, and her parole agent. Boyd offered specific opinions with supporting reasons that (1) the symptoms of Sarmiento's mental disorders motivating her criminal behavior would respond to treatment, and (2) she would not pose an unreasonable risk to public safety if treated in the community. Sarmiento also included a report indicating she had been approved for a County-funded residential substance abuse treatment program. She proposed linking substance abuse treatment in a residential setting with County-funded outpatient mental health treatment that would provide case management, medication management, and individual therapy. The People opposed with argument but no additional evidence.

At the hearing on the motion in May 2023, Sarmiento's counsel emphasized the necessity and importance of providing mental health treatment, specifically therapy and psychiatric medication, for her two primary diagnoses—PTSD and major depressive disorder. He noted that her past attempts at substance abuse treatment had achieved significant success, but the focus on substance abuse was "the only thing that she has done." "The part that has been missing," he said, "is seeing a psychotherapist and taking medication" to address her mental health issues. Counsel also provided additional specifics regarding the treatment plan, explaining that the residential substance abuse treatment program would be for a minimum of three months and that the outpatient mental health services would include psychiatric medication.[2]

---

[2] Counsel added, "The only thing I don't know is where the [psychiatric] services will occur." The court acknowledged that counsel had described the planned services "in a more elaborate and detailed manner than what your paperwork shows."

In response, the People questioned Sarmiento's eligibility for diversion, taking issue with the court's tentative conclusion that her mental disorders played a significant role in the commission of the charged crime. (See § 1001.36, subd. (b)(2).) As to her suitability for the program, the People expressly conceded that Sarmiento met two of the four requirements: (1) she had presented the opinion of a qualified mental health expert (Dr. Boyd) indicating that the symptoms of her mental health disorders would respond to treatment, and (2) she had agreed to waive her speedy trial rights. (See *id.*, subd. (c)(1) & (2).) Instead, they argued that notwithstanding Dr. Boyd's evaluation, Sarmiento had failed to establish her symptoms would respond to treatment.[3] They also contended the mental health treatment plan proposed for Sarmiento was insufficiently specific to demonstrate that it would meet her specialized needs. (See § 1001.36, subd. (f)(1)(A)(i).) Lastly, they maintained she would pose an unreasonable risk to public safety if treated in the community. (See *id.*, subd. (c)(4).)

Ruling from the bench, the court denied the request for diversion. Referring to the statutory criteria, it began by expressly finding that Sarmiento met both of the eligibility standards. She "suffers from a qualifying mental disorder" and "her mental disorders were significant factors in the commission of the offense." As for suitability, the judge accepted that she had consented to diversion and agreed to comply with her treatment plan.

But the court nonetheless found Sarmiento was not suitable for diversion due to several factors. First, it concluded that Sarmiento's

---

3      Admittedly, there is some inconsistency between the People's opposition papers and their statement at the hearing that they "do not dispute . . . that her mental disorder would respond to treatment."

"inability to remain drug-free after prior participation in treatment" indicated "she would not respond well to mental health treatment." The judge believed her past failures in drug treatment predicted more of the same if diversion were authorized. In the judge's view, "past performance is the best indicator of future performance and success."

On a related point, the court expressed doubt that the proposed treatment program "will meet the specialized treatment needs of the defendant." Its reasoning sounded a familiar refrain: "If she didn't have the prior history of committing this conduct, I think we'd be in a different boat. Having previously received treatment for the substance abuse, and having been punished criminally for these offenses and then to continue with this conduct, I don't see the mental health diversion as appropriate."

Finally, the trial court acknowledged that section 1001.36 expressly defines "unreasonable risk of danger to public safety" by reference to section 1170.18, subdivision (c). Such a risk exists only if the evidence indicates it is likely the defendant will commit a so-called "super strike" violent felony. (See § 667, subd. (e)(2)(C)(iv); see, e.g., *People v. Williams* (2021) 63 Cal.App.5th 990, 1001 (*Williams*).) Although the court did not make such a finding, the judge referenced his "residual" discretion under the statute in concluding that diversion should be denied because Sarmiento "pose[d] an unreasonable risk of danger to the public."

On Sarmiento's petition for writ of mandate, we issued an order to show cause.

DISCUSSION

In 2018, the Legislature enacted section 1001.36 to create a program of pretrial diversion for criminal defendants with diagnosed mental health disorders. (Stats. 2018, ch. 34 (Assem. Bill No. 1810); Stats. 2018, ch. 1005

7

(Sen. Bill No. 215).)  Diversion allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment.  (See *People v. Frahs* (2020) 9 Cal.5th 618, 631.) The express purpose of this legislation was to "[i]ncrease[ ] diversion of [such] individuals" (§ 1001.35, subd. (a)) based on concerns that "incarceration only serves to aggravate [their] preexisting conditions and does little to deter future lawlessness."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 215 (2017–2018 Reg. Sess.) as amended Jan. 3, 2018, p. 5.)  Successful mental health treatment, in contrast, both helps the individual and makes the community safer.  More recent amendments have only confirmed the Legislature's desire to expand mental health treatment through diversion. (See Stats. 2022, ch. 735 (Sen. Bill No. 1223); *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*) ["The Legislature intended the mental health diversion program to apply as broadly as possible."].)

A.     *The Mental Health Diversion Process:  An Overview*

Effective January 1, 2023, mental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program.  The criteria for each are specified in the statute.  (§ 1001.36, subds. (b) & (c).)  Defendants are eligible if they have been diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which they are charged.  (*Id.*, subd. (b).)  They are suitable if:  (1) in the opinion of a qualified mental health expert, the defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an "unreasonable risk of danger to public safety" as defined in sections 1170.18 and 667, subdivision (e)(2)(C)(iv).  (§ 1001.36, subd. (c).)

8

In successive versions of section 1001.36, the Legislature has provided increasingly detailed guidance for deciding whether a defendant qualifies for diversion. Initially, the statute listed six criteria that the defendant had to meet. The first two were phrased as requiring the court to be "satisfied" that (1) the defendant suffered from a recognized mental disorder, and (2) the disorder was a "significant factor in the commission of the charged offense." (Former § 1001.36, subd. (b)(1)(A) & (B); Stats. 2018, ch. 1005, § 1.) Effective January 1, 2023, however, these first two requirements were recharacterized as "eligibility" criteria. More substantively, a defendant's eligibility no longer turned on findings to the court's "satisfaction." Rather, defendants are generally eligible if they "ha[ve] been diagnosed" with a recognized mental disorder. (§ 1001.36, subd. (b)(1).) Beyond that, the amended statute creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime. The court is directed to find a causal connection "unless there is clear and convincing evidence that [the mental disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Id.*, subd. (b)(2).)

The amended statute groups the remaining four criteria in section 1001.36, subdivision (c) to assess the defendant's "suitability" for diversion. As with the "diagnosis" eligibility requirement, the first of these relies on input from a medical professional, in this instance "the opinion of a qualified mental health expert," that the symptoms of defendant's mental disorder "would respond to mental health treatment." (*Id.*, subd. (c)(1).) The second and third requirements are satisfied if the defendant agrees to waive his or her speedy trial rights and to comply with treatment as a condition of diversion. (*Id.*, subd. (c)(2)–(3).) Only the fourth requirement necessitates

9

a trial court finding—that the defendant "will not pose an unreasonable risk of danger to public safety . . . if treated in the community." (*Id.*, subd. (c)(4).) Even here, however, the Legislature has narrowly defined the applicable standard. Borrowing from sections 1170.18, subdivision (c) and 667, subdivision (e)(2)(C)(iv), an " 'unreasonable risk . . . to public safety' " means a likelihood that the defendant will commit one of the violent felonies specifically enumerated in the statute.[4] (*Williams, supra,* 63 Cal.App.5th at p. 1001; *People v. Moine* (2021) 62 Cal.App.5th 440, 450 (*Moine*) ["risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies"].)

Assuming the defendant is both eligible and suitable, the trial court must also be satisfied "that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i); see *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079 (*Gerson*).) This is not an additional eligibility or suitability requirement the defendant must meet. Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program.[5]

---

[4] As listed in section 667, subdivision (e)(2)(C)(iv), these felonies include several sex offenses, any homicide offense, solicitation to commit murder, assault with a machinegun on a police officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony punishable by life imprisonment or death.

[5] Subdivision (f)(1)(A)(ii) of section 1001.36 requires agreement of the proposed treatment entity to accept responsibility for treating the defendant. Subdivision (f)(1)(A)(iii) allows a county mental health agency that believes it is unable to provide proper services to submit a written declaration to that effect.

Finally, even where defendants make a prima facie showing that they meet all the express statutory requirements, the court may still exercise its discretion to deny diversion. (*Gerson, supra,* 80 Cal.App.5th at p. 1079; see also *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888 (*Qualkinbush*).) But this "residual" discretion must be exercised " 'consistent with the principles and purpose of the governing law.' " (*Qualkinbush,* at p. 891, quoting *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 710; *Williams, supra,* 63 Cal.App.5th at p. 1001 [" 'scope of discretion always resides in the particular law being applied' "].) That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community. Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals. (*Qualkinbush,* at pp. 891–892.)

B. *Because Sarmiento never previously received treatment for her underlying mental disorders, there was insufficient evidence to show that her symptoms would not respond to treatment.*

The trial court's principal reason for denying diversion was its assessment that Sarmiento had failed in two prior attempts at *drug treatment*, as evidenced by the fact that she relapsed and thereafter resumed her criminal behavior. The court believed this indicated her condition would not likely respond successfully to a third attempt at treatment. In the judge's opinion, her "past performance"—specifically her "inability to remain drug free"—did not justify another try.

Initially we note that relapse following drug treatment does not necessarily mean that the participant "failed" or that treatment was "unsuccessful." Scientific research on brain function has now discredited the

11

once common misconception that people suffering from a substance abuse disorder simply lack sufficient willpower or moral principles. According to the National Institute on Drug Addiction (NIDA), part of the National Institute of Health (NIH), drug addiction is a complex disease like many other chronic health conditions and progress is rarely linear.[6] Significantly, "people in recovery from drug use disorders are at increased risk for returning to drug use even after years of not taking the drug. [¶] It's common for a person to relapse, *but relapse doesn't mean that treatment doesn't work*" (italics added).[7]

More importantly, the undisputed evidence in this case indicates Sarmiento never received *any* coordinated treatment for her two primary mental health diagnoses—PTSD and major depressive disorder.[8] It appears the trial court failed to appreciate the distinction between different types of treatment, conflating substance abuse recovery with therapy and medication directed at PTSD and depression. Even if her prior attempts at substance abuse treatment could be characterized as unsuccessful, Dr. Boyd's report

---

[6] NIDA/NIH, *Understanding Drug Use and Addiction DrugFacts,* <https://nida.nih.gov/publications/drugfacts/understanding-drug-use-addiction> (as of Jan. 9, 2024), archived at <https://perma.cc/67A9-YNP2> (hereafter NIDA/NIH fact sheet).

[7] The NIDA/NIH fact sheet explains that like other chronic health conditions, treatment for substance abuse disorders "should be ongoing and should be adjusted based on how the patient responds."

[8] We have accepted Dr. Boyd's conclusion that Sarmiento's PTSD is "chronic" and "untreated," as well as the People's express concession that "the record does not contain evidence that Petitioner received prior sustained treatment for [PTSD] or depression." We do not view references in Dr. Boyd's report to prior mental health *diagnoses* or her *current* medications as in any way inconsistent with this conclusion or concession. Nor can we speculate on *why* Sarmiento was prescribed any medications she is currently taking.

12

makes clear that Sarmiento was unable to maintain her sobriety because her underlying mental health conditions—the ones that drove her substance abuse as a means of self-medication—were never addressed.

This point was emphasized by defense counsel in oral argument on the motion. The treatment regimen that diversion would make possible expressly linked residential substance abuse treatment with psychiatric medication and psychotherapy addressing the untreated PTSD and depression. Boyd offered her conclusion that the symptoms of Sarmiento's mental health disorders would respond to the proposed treatment plan; the People offered no contrary expert opinion. On this record, where her mental health disorders were never treated comprehensively, there is insufficient evidence to support the trial court's conclusion that Sarmiento's symptoms would not respond to treatment.

C. *The court's concern with Sarmiento's lack of success in past attempts at substance abuse treatment does not support a finding that the recommended treatment would not meet her "specialized needs."*

The trial court employed similar reasoning in support of its conclusion that the recommended treatment plan would not meet Sarmiento's "specialized mental health treatment needs." (§ 1001.36, subd. (f)(1)(A)(i).) Reprising his principal criticism of Sarmiento, the judge focused on her inability to remain law-abiding after receiving *substance abuse* treatment. "[W]e'd be in a different boat," he candidly acknowledged, if Sarmiento "didn't have the prior history of committing this conduct," of "having previously received treatment for the substance abuse," "of having been punished criminally for these offenses," and then reoffending.

To the extent these criticisms merely reiterate the trial court's concern that Sarmiento was not appropriate for diversion because her prior attempts at substance abuse treatment were unsuccessful, they are subject to the same

13

objection as the court's conclusion that her symptoms would not respond to treatment. Sarmiento's supposed lack of success in drug treatment does not rationally support a conclusion that a comprehensive program of treatment for her underlying mental health diagnoses of PTSD and depression, coupled *with* substance abuse treatment, would not yield different (and more positive) results.

But there is an additional flaw in the court's analysis. As we have already explained, subdivision (f)(1) of section 1001.36 does not create an additional eligibility or suitability requirement for the defendant. The focus of this provision is on the *program of treatment*, providing reasonable assurance that it will address the defendant's particular mental health needs. Under this provision, a court might reject diversion if it concluded that the proposed treatment services did not target or could not effectively address the defendant's particular diagnosis.[9] Here, the alleged failure of *prior* drug treatment programs says nothing about any inadequacy of the *proposed* plan to address Sarmiento's mental health needs. Indeed, Dr. Boyd's evaluation specifically explains why the current proposal is significantly different from Sarmiento's prior substance abuse-only treatment efforts that were not linked to monitored psychiatric medication and therapy addressing her PTSD and depression. Again, we conclude there is no substantial evidence to support the court's conclusion that the recommended treatment program will not meet Sarmiento's specialized mental health treatment needs.

---

[9] For instance, the court might be legitimately concerned if the evaluation of the defendant suggested the need for psychiatric medication and the recommended program did not provide psychiatric services.

14

D. *The trial court misapplied the statutory criteria in deciding that residual concerns for public safety not amounting to a likelihood that Sarmiento will commit a super strike offense can justify the denial of diversion.*

Apart from concerns with what it believed were her failures following drug treatment, the court also relied on its residual discretion under the diversion statute to conclude that Sarmiento "pose[d] an unreasonable risk to public safety." It acknowledged that an "unreasonable risk of danger to public safety" is expressly defined in the statute to mean a likelihood that if the defendant is granted diversion, she will commit one of the "super strike" violent felonies enumerated in section 667, subdivision (e)(2)(C)(iv). Yet it made no finding of such a likelihood, impliedly acknowledging there was none. Rather, the judge referenced his "residual" discretion under the statute: "But this is a statute that is discretionary and is up to the discretion of the court." On that basis and without any further analysis, he concluded that "this behavior does pose an unreasonable risk of danger to the public."

As we explained in *Qualkinbush, supra,* 79 Cal.App.5th 879, even after a defendant makes a prima facie case that she meets all the qualifications to be considered for diversion—as Sarmiento did here—the court "may still exercise its discretion to deny mental health diversion." (*Id.* at p. 888; *Gerson, supra,* 80 Cal.App.5th at p. 1080.) Necessarily, however, this residual discretion must still be exercised consistent with express statutory requirements and the underlying purposes of mental health diversion, as well as an understanding of the findings that prompted the Legislature to create the diversion program. So while it is clear a trial court retains "residual" discretion to deny diversion even if all the threshold requirements are met, that does not mean, as the court suggested here, that it could reject a request for diversion based on an alternative meaning of "public safety" inconsistent with the specific statutory definition in section 1001.36, subdivision (c)(4).

15

In the guise of exercising its "residual" discretion, a court is not permitted to redefine public safety in a manner inconsistent with the Legislature's expressed intent. (*Moine, supra,* 62 Cal.App.5th at p. 450 ["the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies"].)

In *Whitmill, supra,* 86 Cal.App.5th 1138 (*Whitmill*), our colleagues in the Second Appellate District, Division Eight recently reached a conclusion fully consistent with this principle. Indeed, the background facts of *Whitmill* are quite similar. The defendant was diagnosed with military sexual trauma and PTSD. (86 Cal.App.5th at p. 1144.) A psychological evaluation concluded that he had " 'severe mental illlness' further complicated by substance abuse." (*Ibid.*) The evaluating psychologist proposed a dual-diagnosis treatment program that included antidepressant medication, psychological therapy, and substance abuse treatment. (*Id.* at p. 1145.) In the psychologist's opinion, this treatment plan would allow the defendant to be safely treated in the community. (*Ibid.*) The prosecution opposed the request but submitted no contrary expert testimony. (*Ibid.*)

On this record, the trial court in *Whitmill* denied the defendant's request for mental health diversion, relying on evidence that in conjunction with the current charges, the defendant threatened to kill his girlfriend after firing a gun in the air. Although he then threw the gun away and immediately surrendered to a deputy without incident, the court nonetheless concluded that defendant's conduct created an unacceptable risk of dangerousness. (86 Cal.App.5th at p. 1146.)

The Court of Appeal disagreed and reversed with directions to grant diversion. Acknowledging that the decision to offer diversion was committed to the trial court's sound discretion and noting this discretion applied even

16

where the defendant facially met all the threshold statutory requirements (86 Cal.App.5th at p. 1149), *Whitmill* emphasized the need for the court to consider "the primary purposes of the mental health diversion statute," which included "keep[ing] people with mental disorders from entering and reentering the criminal justice system while protecting public safety." (*Ibid.*) It further noted the Legislature's intent that the diversion program "apply as broadly as possible." (*Ibid.*)

The sole issue in the case was whether the defendant would pose "an unreasonable risk of danger to public safety . . . if treated in the community." (*Whitmill, supra,* 86 Cal.App.5th at p. 1150.) In other words, diversion was properly denied only if the defendant was "too dangerous to be treated in the community because he would commit a new violent super strike." (*Ibid.*) Considering the defendant's lack of a prior record of violence and the totality of circumstances in the case, the appellate court concluded there was "no substantial evidence to support the trial court's finding that appellant posed an unreasonable risk of committing a super strike if treated in the community." (*Id.* at p. 1156.) The trial judge likewise applied an incorrect standard by "fail[ing] to consider the primary purposes of mental health diversion as set forth in section 1001.35." (*Whitmill,* at p. 1156.) As a concurring justice added, granting diversion was "the result the legislature intends courts to reach under these circumstances." (*Id.* at p. 1156, conc. opn. of Harutunian, J.)

Similarly here, there is no substantial evidence to support a conclusion that Sarmiento was likely to commit a super strike offense. Indeed, the charged offense in this case involved no evidence of a weapon or threat of violence. Nor could the court invoke its "residual" discretion to create a definition of "risk to public safety" inconsistent with the statutory definition.

"By requiring an assessment of whether the defendant 'will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv), a trial court necessarily must find the defendant is 'likely to commit a super-strike offense.' " (*Moine, supra,* 62 Cal.App.5th at p. 450, quoting *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310.)  There is no basis for such a conclusion here.

Expanding the reasons to deny diversion would also be inconsistent with the legislative purposes sought to be achieved in enacting sections 1001.35 and 1001.36.  In both the original legislation and subsequent amendments, the Legislature has made it abundantly clear that for persons with diagnosed disorders, mental health treatment provides the best strategy for breaking the cycle of criminal recidivism.  (*Whitmill, supra,* 86 Cal.App.5th at p. 1149 ["stated purpose of this legislation is to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety"].)  Reducing crime makes our communities safer, to be sure, but successful treatment also improves our society in a myriad of other ways by helping those with mental disorders become more productive citizens, to the benefit of their families, their employers, and the community at large.  The trial court's decision here failed to follow the Legislature's direction to focus less on the flaws in Sarmiento's past and more on the promise of her future and that of her community.

We are sensitive to and respect the concerns of our dissenting colleague regarding the importance of trial court discretion.  Collectively we served on the superior court for more than 30 years.  But where to draw the line between the proper and improper exercise of discretion is always a matter of degree and context.  And while the majority and dissenting opinions here surely reflect philosophical differences regarding mental health diversion, the

18

respective views of appellate judges on the topic are not the determining factor.  Rather, the scope of trial court discretion in applying the statute must be informed by an appreciation for the crucial role of the Legislature in setting criminal justice policy.

Relying on advances in psychology and neuroscience, the Legislature has made it abundantly clear that for defendants whose criminal behavior is a function of their diagnosed mental health disorders, treatment is the much preferred option so that diversion should "apply as broadly as possible." (*Whitmill, supra,* 86 Cal.App.5th at p. 1149.)  And we cannot ignore that from the legislative perspective, a defendant like Sarmiento is the poster child for mental health diversion.  Although she plainly never asked for the psychological conditions that challenge her, the question is not whether Sarmiento "deserved" the opportunity for treatment.  The Legislature has determined that in most cases, the community will be safer if defendants like Sarmiento receive mental health treatment so that they will pose fewer risks to the community both now and in the future.  The trial court's role is to determine whether a narrow range of factors warrant making this specific case an exception.  None of the court's specified reasons here justify the decision to deny Sarmiento mental health diversion.

## DISPOSITION

A peremptory writ of mandate shall issue directing the superior court to vacate its order denying mental health diversion and enter a new order granting her request. The stay issued August 22, 2023 is vacated on the date this opinion becomes final as to this court. (See Cal. Rules of Court, rule 8.264(b).)

DATO, J.

I CONCUR:

KELETY, J.

20

Irion, J., Dissenting.

I disagree with the majority's resolution of this case.  In my view, in granting writ relief the majority neglects principles of writ review, disregards the applicable standard of review, ignores facts that refute its premises and conclusions, and misconstrues the mental health diversion statute.  I cannot join such a decision.

## I

### *No Basis for Extraordinary Writ Review*

No order to show cause should have been issued in this case.  Except when it is the only form of appellate review available, writ review of an interlocutory order should be confined to two categories of cases.  One category includes cases presenting an issue of "public or jurisprudential significance," such as "a novel or constitutional question," an issue "of widespread interest," or an issue that has produced "conflicting trial court interpretations [that] need resolution."  (*Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1100.)  The other includes cases where "the lower court's determination imposes unusually harsh and unfair results for which ordinary appellate review is inadequate."  (*Id.* at pp. 1100–1101.)  This case fits into neither category.

### A

### *No Significant Legal Issue*

Jeanette Sarmiento raised no significant legal question in her petition.  She merely complained that in denying her request for mental health diversion, the trial court applied incorrect legal standards and reached conclusions unsupported by substantial evidence.  That is a routine challenge to the court's assessment of the evidence and exercise of discretion in

applying the governing statute to the evidence. Prerogative writs should be used to review discretionary pretrial rulings only when they involve "questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185, fn. 4; accord, *Langhorne v. Superior Court* (2009) 179 Cal.App.4th 225, 234; see *Conway v. Municipal Court* (1980) 107 Cal.App.3d 1009, 1016 (*Conway*) [writ of mandate "will not lie to force an exercise of discretion in a particular manner"].) That is not the situation here.

B

*No Irreparable Injury*

Sarmiento also has not shown she will suffer harm that cannot be adequately redressed on appeal. The order denying mental health diversion could have been reviewed on appeal of the judgment finally entered in her case. (Pen. Code, §§ 1237, subd. (a), 1259;[1] *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887–888 (*Qualkinbush*).) Appeal is a presumptively adequate remedy, and Sarmiento has the burden to show it is not. (*Phelan v. Superior Court* (1950) 35 Cal.2d 363, 366 (*Phelan*); *People v. Jahansson* (2010) 189 Cal.App.4th 202, 213; *Provencher v. Municipal Court* (1978) 83 Cal.App.3d 132, 133–134 (*Provencher*).) She has not met that burden.

Sarmiento's allegation she "has no plain, speedy, or adequate remedy at law other than the relief sought in this petition," made "without reference to any facts, [is] not sufficient to sustain [her] burden of showing that the remedy of appeal would be inadequate." (*Phelan, supra*, 35 Cal.2d at p. 370.) Neither is her allegation she "w[ould] be irreparably injured" without writ review by being "deprived of critical mental health treatment and her lawful

---

[1] Subsequent undesignated section references are to the Penal Code.

opportunity to earn a dismissal of her criminal charge" and by being "unjustly expose[d] . . . to a term in state prison" through continued prosecution. She has not explained why she cannot obtain necessary mental health treatment while the criminal case proceeds against her, nor identified any specific injury she will suffer without treatment. Any prison term imposed on Sarmiento could be vacated, and her opportunity to obtain dismissal of the attempted robbery charge could be restored, by a successful attack on the order denying mental health diversion in an appeal of the judgment entered in the case. What Sarmiento is really complaining about is having to go through a trial, and if necessary, an appeal. "A trial does not generally meet the definition of 'irreparable injury,' being at most an irreparable inconvenience." (*Ordway v. Superior Court* (1988) 198 Cal.App.3d 98, 101, fn. 1 (*Ordway*).) And the remedy by appeal " 'is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of an extraordinary writ.' " (*Provencher, supra*, 83 Cal.App.3d at p. 134.)

C

*Disruption of Orderly Processing of Cases*

There is simply nothing unusual about this case that warrants extraordinary writ review. It is a routine matter that should have been handled in the routine way, i.e., by a trial followed, if necessary, by an appeal. Because review of an interlocutory order on appeal from the final judgment is an adequate remedy in the usual case, reviewing courts should not delay trials and vex parties with multiple proceedings by regularly intervening by writ whenever a party claims the trial court ruled wrongly on a motion. (*Provencher, supra*, 83 Cal.App.3d at p. 134.) "Also, it is not fair to parties on appeal who have often waited years for the final resolution of their

3

disputes to have litigants in the pretrial stage elbow their way into the line at our door." (*Ordway, supra*, 198 Cal.App.3d at p. 101, fn. 1.) By taking " ' "too lax a view of the 'extraordinary' nature of prerogative writs" ' " in issuing the order to show cause in this case, the majority delayed resolution of appeals pending in this court to issue an opinion of no precedential value. (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1272.) I disagree with that decision.

## II

### *No Basis for Extraordinary Writ Relief*

No writ relief should be granted in this case. The majority's contrary decision flows from its foundational error in not clearly articulating and applying the applicable standard of review: abuse of discretion. An opinion "that fails to apply the appropriate standard of review is of questionable value because it is little more than untethered personal opinion. In such a case, principles of law are discussed with no point of reference. They are not circumscribed by proper deference to the appellate standard of review." (*People v. Foss* (2007) 155 Cal.App.4th 113, 125.) As I explain below, when the trial court's order is reviewed for abuse of discretion, it must be upheld.

### A

### *Standard of Review*

The mental health diversion statute provides the trial court "may, in its discretion," grant a defendant's pretrial request for diversion. (§ 1001.36, subd. (a).) An order denying such a request is reviewed for abuse of discretion. (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080 (*Gerson*); *Qualkinbush, supra*, 79 Cal.App.5th at p. 887.) That standard is "deferential," but "the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are

4

reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 709, 711–712, fns. omitted.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.) A decision that "exceed[s] the bounds of reason" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 (*Shamblin*)) or "is so irrational or arbitrary that no reasonable person could agree with it" (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*)) constitutes an abuse of discretion. A party attacking a decision as an abuse of discretion must show such prejudicial abuse. (*People v. Montes* (2014) 58 Cal.4th 809, 869; *People v. Pacheco* (2022) 75 Cal.App.5th 207, 213 (*Pacheco*).)

B

*No Prejudicial Error in Trial Court's Determinations*

Sarmiento challenges the trial court's determinations she would not respond to mental health treatment, posed an unreasonable risk of danger to public safety, and had not presented a satisfactory treatment plan to meet her specialized mental health needs. The majority concludes errors in each of those determinations require the trial court to vacate its order denying her request for mental health diversion and to enter a new order granting the request. I shall address each alleged error and explain why, in my view, none justifies the relief granted by the majority.

5

*No Abuse of Discretion in Response to Treatment Determination*

The majority faults the trial court for relying on Sarmiento's relapses into substance abuse and criminal behavior after having twice undergone treatment for substance abuse to conclude she would not respond to mental health treatment. According to the majority, those relapses do not indicate any failure on the part of Sarmiento or any lack of success of the prior treatment because substance abusers commonly relapse. (Maj. opn., *ante,* at pp. 11–12.) The majority faults the trial court for "conflating substance abuse recovery with therapy and medication directed at PTSD [posttraumatic stress disorder] and depression," conditions the majority says "were never treated comprehensively." (Maj. opn., *ante,* at pp. 12–13.) The majority is wrong on the facts and the law.

The trial court properly considered Sarmiento's relapses into substance abuse and criminality after treatment in determining whether she would respond to mental health treatment. One suitability requirement for pretrial diversion is that "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (c)(1).) Cynthia Boyd, Ph.D., a forensic neuropsychologist who interviewed Sarmiento once at the jail, diagnosed her with "[PTSD], Chronic," "Major Depressive Disorder, Recurrent," and "Stimulant Use Disorder-Methamphetamine (in institutional remission)"; and attributed her criminal behavior to the "pursuit of methamphetamine" and "need[ ] to obtain money to buy drugs for herself and likely her boyfriend." In the section of her report on section 1001.36, subdivision (c)(1), Boyd stated depression and PTSD can be treated with medication and psychotherapy, but said nothing

about substance abuse treatment. She noted earlier in the report, however, that Sarmiento started using methamphetamine 26 years ago, completed a residential substance abuse treatment program in 2013, had multiple hospitalizations for substance abuse in 2019, and completed courses on substance abuse and relapse prevention in prison in 2021, but relapsed into methamphetamine abuse and committed robbery or attempted robbery after those interventions. Of the three mental health disorders with which Boyd diagnosed Sarmiento, the substance abuse disorder was the one most immediately related to her criminal behavior. The trial court therefore reasonably focused on that disorder and how Sarmiento had responded to treatment of that disorder. As the court stated, "past performance is the best indicator of future performance and success."[2]

Sarmiento's past poor performance, as documented in Boyd's report, constitutes substantial evidence, i.e., evidence that is " 'reasonable, credible,

_____

[2] The Legislature has recognized past performance is relevant to predicting future performance by expressly authorizing a trial court to "consider previous records of participation in diversion" "when determining whether to exercise its discretion to grant diversion." (§ 1001.36, subd. (k).) Courts have similarly recognized the predictive value of past performance in this and other contexts. (See, e.g., *In re Shaputis* (2011) 53 Cal.4th 192, 219 ["Past criminal conduct and current attitudes toward that conduct may both be significant predictors of an inmate's future behavior should parole be granted."]; *Loder v. City of Glendale* (1997) 14 Cal.4th 846, 908 (conc. & dis. opn. of Mosk, J.) ["a current employee's actual safety record is in all likelihood a much better predictor of future safety performance than is the off-the-job drug use tested by urinalysis"]; *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1152 (*Whitmill*) [past benefit from mental health treatment indicated likelihood defendant would respond to treatment if diverted]; *In re L.O.* (2021) 67 Cal.App.5th 227, 238 [" ' " '[P]ast violent behavior in a relationship is "the best predictor of future violence." ' " ' "]; *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior."].)

and of solid value' " (*Gerson, supra*, 80 Cal.App.5th at p. 1079), supporting the trial court's conclusion that Sarmiento would not respond to mental health treatment. (See *Pacheco, supra*, 75 Cal.App.5th at p. 214 [defendant's 14-year history of abusing methamphetamine and prior related arrests made "his resolve to stop using the drug . . . dubious"].) The court did not "exceed[ ] the bounds of reason" by drawing that conclusion and denying the request for diversion. (*Shamblin, supra*, 44 Cal.3d at p. 478; *Pacheco*, at p. 213.)

The majority suggests, however, relapse is so common in persons with substance abuse disorders that a trial court ruling on a motion for pretrial diversion cannot consider relapse as a failure of treatment and deny diversion on that basis. For this proposition, the majority cites an online publication by the National Institute on Drug Abuse entitled "Understanding Drug Use and Addiction DrugFacts," which states that "relapse doesn't mean that treatment doesn't work." (Maj. opn., *ante,* at p. 12.) The publication also states, "Relapse indicates the need for more or different treatment." Such treatment, of course, can help only someone who desires and obtains it. The trial court reasonably could conclude based on Sarmiento's multiple relapses that she is not committed to sobriety and would not respond to treatment. (See *Pacheco, supra*, 75 Cal.App.5th at p. 214 [defendant's 14-year history of abusing methamphetamine and prior related arrests made "his resolve to stop using the drug . . . dubious"]; *People v. Watts* (2022) 79 Cal.App.5th 830, 837 (*Watts*) [defendant's history of noncompliance with treatment justified denial of pretrial diversion].) In any event, the NIDA publication is of little value in predicting whether Sarmiento would respond favorably to additional treatment and avoid criminal behavior, because it says nothing about the causes or likelihood of relapse in any particular case or the connection between relapse and criminality.

8

More concerning is the logical implication of the majority's suggestion. If the commonness of relapse after treatment in defendants with substance abuse disorders prohibits a trial court from considering relapse as a basis for concluding a defendant would not respond to treatment, then whenever a defendant with a qualifying substance abuse disorder relapses and commits a crime to which the disorder contributed, the court could not deny pretrial diversion on the basis of relapse *no matter how many times the defendant had been treated and relapsed.* I cannot subscribe to an approach to the mental health diversion statute that would lead to such an absurd result. (See, e.g., *People v. Bullard* (2020) 9 Cal.5th 94, 107; *People v. Elias* (1990) 218 Cal.App.3d 1161, 1164.)

Nor can I assent to the majority's conclusion the trial court erred in denying pretrial diversion by failing to consider Sarmiento's lack of prior treatment for PTSD and depression, conditions Boyd reported led Sarmiento to "self-medicat[e]" with methamphetamine and to commit robbery and attempted robbery to get money to buy the drug. A careful review of the documents Sarmiento submitted in support of her request for pretrial diversion refutes the majority's factual premise that "Sarmiento never received *any* coordinated treatment" for PTSD and depression. (Maj. opn., *ante,* at p. 12.)

Boyd reported Sarmiento had been prescribed antidepressant medication when she was 13 years old, had been diagnosed with PTSD in 2019, and was currently taking Trazodone (which Boyd described as an "antidepressant and sedative") and Remeron (which Boyd described as an

9

"antidepressant").[3]  In an interview with Sarmiento's counsel, Sarmiento's mother reported Sarmiento was diagnosed with depression and anxiety in childhood and was prescribed and took medication.  Sarmiento's former employer told her counsel he had offered in April 2022 to move her to a different location so that she could get treatment, but she declined. Sarmiento's parole officer told her counsel that Sarmiento "attended all of her Behavioral/Mental Health appointments . . . from July through December of 2022."  Records from hospitalizations for acute methamphetamine intoxication and an anxiety attack in 2019 state Sarmiento was given information and resources to follow up with her primary care physician and a psychiatrist as an outpatient and declined to meet with a social worker about follow-up care.

The record thus shows Sarmiento for many years has been under the care of a psychiatrist or other physician and has been treated for PTSD and depression or has been offered such treatment, and despite such treatment or offers she continued to abuse methamphetamine and to commit crimes. A reasonable inference from this record is that Sarmiento would not respond to mental health treatment for depression and PTSD if she were diverted because she has not responded in the past.  (See fn. 2, *ante*.)  Since that inference supports the trial court's decision to deny the request for pretrial diversion, we must draw that inference.  (*People v. Flores* (2020) 9 Cal.5th

---

[3]      Trazodone and Remeron (a brand name for mirtazapine) are used to treat depression, methamphetamine use disorders, and anxiety disorders, including PTSD.
(<https://www.ncbi.nlm.nih.gov/books/NBK470560/#:~:text=Trazodone%20re duces%20levels%20of%20neurotransmitters,alpha%2D1%2Dadrenergic%20r eceptors> [as of Jan. 9, 2024], archived at <https://perma.cc/SA35-VCX7>; <https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3907331/> [as of Jan. 9, 2024], archived at <https://perma.cc/42S5-TDNM>.)

371, 411; *Shamblin, supra,* 44 Cal.3d at pp. 478–479; *Gerson, supra,* 80 Cal.App.5th at p. 1079; *Watts, supra,* 79 Cal.App.5th at p. 837.)

The majority refuses to draw that inference and instead relies on the People's concession "the record does not contain evidence that [Sarmiento] received prior sustained treatment for [PTSD] or depression." This court is not bound to accept a party's concession. (*People v. Kim* (2011) 193 Cal.App.4th 836, 847; *Bell v. Tri-City Hospital Dist.* (1987) 196 Cal.App.3d 438, 448–449; *People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021.) "In [my] view, the [People's] erroneous concession cannot and should not prevent this court from applying sound legal principles to the objective facts disclosed by the record." (*Bell*, at p. 449.) Application of such principles to the actual facts requires us to uphold the trial court's decision to deny diversion.

2

*No Abuse of Discretion in Satisfactory Treatment Plan Determination*

I also disagree with the majority's conclusion insufficient evidence supports the trial court's determination the proposed treatment program would not meet Sarmiento's particular needs. One condition pretrial diversion is "subject to" is that "[t]he court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i); see *People v. Frahs* (2020) 9 Cal.5th 618, 627 [court may grant pretrial diversion if it "is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant"]; *Qualkinbush, supra,* 79 Cal.App.5th at pp. 886–887 [describing court's satisfaction with recommended mental health treatment program as one of the "statutory requirements" for pretrial diversion].) The trial court was not satisfied with the treatment plan described at the hearing,

11

based in part on Sarmiento's commission of crimes related to her substance abuse even after she had received treatment and been incarcerated. The majority faults the trial court for relying on her recidivism, because, the majority says, her "supposed lack of success in drug treatment does not rationally support a conclusion that a comprehensive program of treatment for her underlying mental health diagnoses of PTSD and depression, coupled *with* substance abuse treatment, would not yield different (and more positive) results." (Maj. opn., *ante*, p. 14.) This criticism of the trial court's determination is unpersuasive because the majority again relies on the premise Sarmiento has not previously been treated for PTSD and depression. As explained above, that premise is false. (See pp. 9–11, *ante*.)

Furthermore, Sarmiento's relapse-related recidivism was not the only reason the trial court was dissatisfied with the proposed treatment program, despite the majority's contrary suggestion. At the hearing on the request for pretrial diversion, the court identified as a "sticking point" whether "a program that would address her needs . . . has been identified and properly presented." It was Sarmiento's burden to present a satisfactory plan to the court. (§ 1001.36, subd. (e); *Gerson, supra*, 80 Cal.App.5th at pp. 1078–1079.) She did not do so.

In her written filing, Sarmiento stated that based on an evaluation by a licensed mental health clinician who works for the public defender, the plan was for her to attend a County-funded residential treatment program for substance abuse; get connected to resources that target her specific mental health needs while in the program; and then receive medication management services, case management, and individual therapy through the County-funded outpatient mental health clinic. Sarmiento identified no treatment provider, no duration of treatment, and no specific treatment she would

12

receive; nor did she explain how any treatment would address the symptoms that contributed to her commission of crimes.  Her counsel tried to supply some of the missing information at the hearing by referencing Boyd's recommendations of psychotherapy for PTSD, a psychiatric consult for medication for PTSD, and substance abuse education and treatment.  But Boyd stated in her report "she would not be treating [Sarmiento], or finding others to treat her," and her recommendations were merely "offered for consideration."  Counsel admitted at the hearing there was no "specific plan" for Sarmiento, but assured the court that before she completed the residential substance abuse treatment program, "we will apply to the different places and we will figure out the best fit, and she will have a place where she can go and see somebody and talk to somebody about her issues and get medication."

I cannot agree that what was so vaguely presented to the trial court was "a comprehensive program of treatment," as the majority asserts.  (Maj. opn., *ante*, at p. 14.) The uncertainty about whether Sarmiento would be treated at all and, if so, the lack of specificity in how, how long, where, and by whom she would be treated—serious defects the majority ignores—support the trial court's conclusion Sarmiento did not meet her burden to present a plan that would meet her specialized mental health treatment needs. (§ 1001.36, subd. (f)(1)(A)(i); *Gerson, supra*, 80 Cal.App.5th at pp. 1079–1080; *Qualkinbush, supra*, 79 Cal.App.5th at pp. 886–887.)  Its decision to deny diversion on that ground was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377; see *Watts, supra*, 79 Cal.App.5th at p. 837 [insufficient case plan justifies denial of pretrial diversion].)

13

*No Prejudicial Error in Dangerousness Determination*

The majority also sets aside the trial court's determination that Sarmiento is not suitable for diversion because she poses an unreasonable risk of danger to public safety.[4] (Maj. opn., *ante*, at pp. 15–18.) I disagree with the majority's treatment of this issue as well.

Had the majority not erred in concluding insufficient evidence supported the trial court's determinations Sarmiento would not respond to mental health treatment and had not presented an adequate treatment plan, it would not need to address the dangerousness issue. A trial court's denial of a request for mental health diversion must be upheld if at least one of the grounds for denial is sufficient. (*Watts, supra*, 79 Cal.App.5th at p. 837; *People v. Oneal* (2021) 64 Cal.App.5th 581, 593.) "Since the trial court gave multiple grounds for denying diversion, any one of which was an independently permissible basis for concluding the requirements of section 1001.36 had not been met, it [would be] harmless error [if] one of the multiple grounds [were] invalid." (*Watts*, at p. 837.) Thus, even had the court erred by relying on Sarmiento's dangerousness to deny her request for pretrial diversion, we still must uphold the denial because, as I have explained, the two other "grounds for denying diversion cited by the court reflected an

---

[4]     One of the suitability requirements for pretrial diversion is that "[t]he defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).) Section 1170.18, subdivision (c) defines "unreasonable risk of danger to public safety" as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)]." Such felonies, known colloquially as "super strikes," include violent sex crimes, homicides, and felonies punishable by life imprisonment or death. (*People v. Valencia* (2017) 3 Cal.5th 347, 351 & fn. 3.)

independent assessment by the court and were supported by substantial evidence that brought the court's decision well within its discretion." (*Ibid.*)

Having decided to overturn the trial court's determinations on those other grounds, however, the majority must address the court's dangerousness ruling. The majority relies primarily on *Whitmill, supra*, 86 Cal.App.5th 1138, where the only statutory ground at issue was dangerousness, to conclude a court may not deny a pretrial diversion request on that ground unless the court finds, based on substantial evidence, that the defendant would pose an unreasonable risk of committing a super strike if treated in the community. (Maj. opn., *ante*, at pp. 16–18.) The majority asserts allowing a court to deny diversion based on dangerousness without such a finding would be inconsistent with the statutory purpose to provide treatment to a defendant with a qualifying mental health disorder as "the best strategy for breaking the cycle of criminal recidivism." (Maj. opn., *ante,* at p. 18.) I am not persuaded.

I agree that if substantial evidence supports a finding a defendant would pose an unreasonable risk of committing a super strike if treated in the community, the defendant is not suitable for pretrial mental health diversion. (§ 1001.36, subd. (c)(4).) But I do not agree that if the defendant does not pose such a risk, *but does pose an unreasonable risk of committing some other violent crime if treated in the community*, the trial court may not rely on *that* risk in combination with other factors to deny pretrial diversion. After all, the statute gives the court discretion to grant a request for diversion, and it may deny such a request if it determines the defendant or the crime is not suitable. (*Id.*, subds. (a), (e); *People v. Bunas* (2022) 79 Cal.App.5th 840, 861–862.) Indeed, a court has discretion to deny a request for pretrial diversion even if the defendant meets all the eligibility and

15

suitability criteria. (*Whitmill, supra*, 86 Cal.App.5th at p. 1149; *Gerson, supra*, 80 Cal.App.5th at p. 1080.) A trial court thus must consider and weigh all relevant statutory factors in exercising its discretion, including the express statutory purpose to "[i]ncrease[ ] diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system *while protecting public safety*." (§ 1001.35, subd. (a), italics added.) I disagree with the majority's broad pronouncements to the extent they would prohibit a court from taking into consideration a defendant's risk of committing a violent crime that does not constitute a super strike when exercising its discretion on a request for pretrial diversion.

III

*Conclusion*

We never should have taken this case up on writ review. A writ of mandate "will not lie to force an exercise of discretion in a particular manner." (*Conway, supra*, 107 Cal.App.3d at p. 1016.) Where, as here, the trial court is given discretion in a matter, " ' " [a]n appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Carmony, supra*, 33 Cal.4th at p. 377.) "The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' " (*Newbauer v. Newbauer* (1949) 95 Cal.App.2d 36, 40.) The majority violates these rules to overturn an order with which it disagrees but was within the trial court's discretion to make, and it does so based on an assumed set of facts contradicted by the record.

16

I dissent.  I would discharge the order to show cause as having been improvidently issued, summarily deny Sarmiento's petition, and dissolve the stay of trial court proceedings.


IRION, Acting P. J.

17